IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**CYNTHIA R. LITTLE**                                                                                          **PLAINTIFF**

vs.                         CIVIL NO. 2:17-cv-02142-PKH-MEF

**NANCY A. BARRYHILL, Commissioner,**                                                   **DEFENDANT**
**Social Security Administration**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Cynthia R. Little, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability insurance benefits and a period of disability (DIB) and for supplemental security income (SSI) under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1383(c)(3). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* U.S.C. § 405(g).

### I.   Procedural Background

Plaintiff filed her applications for DIB and SSI on November 23, 2012, alleging disability since August 4, 2014, due to back, chronic depression, degenerative disc disease, spinal stenosis, arthritis, anxiety, and neck issues. (ECF No. 9, pp. 12, 222-236, 257, 286).

Plaintiff's application was denied initially and upon reconsideration. (ECF No. 9, pp. 147, 150, 156-159). An administrative hearing was held on March 10, 2016, before the Hon. Harold

D. Davis.  (ECF No. 9, pp. 36-70).  Plaintiff and her mother, Alice Fay Shannon, and a vocational expert ("VE"), Zachariah R. Langley, testified.  (ECF No. 9, pp. 36, 62).  Plaintiff was represented by counsel, James O'Hern.  (ECF No. 9, p. 35).

By written decision dated April 22, 2016, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical, thoracic and lumbar spine with cervical spondylosis, status-post lumbar disc fusion; osteoarthritis; carpal tunnel syndrome; obesity; affective disorder; and, anxiety disorder.  (ECF No. 9, p. 14).  The ALJ next determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any impairment in the Listing of Impairments.  (ECF No. 9, p. 14).  After discounting Plaintiff's credibility, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except with the following limitations: the claimant could perform simple tasks and follow simple instructions, and she could have only incidental contact with the public.  (ECF No. 9, p. 21).

With the assistance of a vocational expert, the ALJ determined Plaintiff could not perform her past relevant work ("PRW"), but she could perform the requirements of the representative occupations of Asphalt Distributor Tender (DOT # 853.665-010), with 300  jobs in Arkansas and 41,000 jobs in the national economy; Coin-Machine Collector (DOT # 292.687-010), with 1,100 jobs in Arkansas and 96,000 jobs in the national economy; and, Cleaner, Housekeeping (DOT  # 323.687-014) with 1,000 jobs in Arkansas and 125,000 jobs in the national economy.  (ECF No. 9, p. 28).  The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant period.  (ECF No. 9, p. 24).

On November 14, 2016, attorney James O'Hern withdrew from the case.  (ECF No. 9, p. 11).  On June 20, 2017, the Appeals Council denied Plaintiff's request for review.  (ECF No. 9,

p. 5). Plaintiff subsequently filed this action on August 22, 2017. (ECF No. 1). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs (ECF Nos. 13, 14), and the case is now ready for decision.

## II. Relevant Evidence

The undersigned has conducted a thorough review of the entire record in this case. Because the Plaintiff's appeal concerns the limitations resulting from her back problems, pain, and mental impairments, the undersigned will only recount the evidence relevant to her claim.

On December 26, 2013, Plaintiff had a new patient appointment with Dr. Kradel. Plaintiff complained of pain in her left shoulder for the past month, primarily with internal rotation, and no recent injury. (ECF No. 9, p. 454). Dr. Kradel's physical findings included no decrease in suppleness in Plaintiff's neck, normal findings with no costovertebral angle tenderness, and only full range of motion at shoulder under musculoskeletal findings. (ECF No. 9, p. 456). Dr. Kradel opined the shoulder pain may be a C-spine issue but more likely bursitis or rotator cuff injury. (ECF No. 9, 457).

On January 30, 2014, Plaintiff was seen by Dr. Kradel and reported left shoulder pain, which he opined was suggestive of a transient ischemic attack. (ECF No. 9, p. 452).

On February 28, 2014, Plaintiff had a follow up appointment with Dr. Kradell to go over her doppler results. (ECF No. 9, p. 447). He opined that her central problem was likely depression, and that the treatment plan would be to control her depression and then address other issues. (ECF No. 9, p. 445). He also noted that her carotid Doppler and Holter monitor results looked okay. (ECF No. 9, p. 445).

On April 4, 2014, Plaintiff had a follow up appointment with Dr. Kraddel for her depression, which was noted as improving. (ECF No. 9, p. 444).

On June 6, 2014, Plaintiff had a follow up appointment with Dr. Kradel who noted that: she was handling her depression well and there had been no change; that they needed to start treatment on her hyperlipidemia; and, that menopause was a likely cause of her other symptoms, and they would consider hormone replacement therapy after checking her thyroid stimulating hormone (TSH) levels. (ECF No. 9, pp. 441-443).

On July 17, 2014, Plaintiff had a follow-up appointment and saw Dana L. Hale, ARPN. (ECF No. 9, p. 425). Her active problems were listed as carotid atherosclerosis, depression, hyperlipidemia, menopause symptomatic, and obesity. *Id*. She reported pain in the upper/mid back for three days with a history of degenerative disc disease. *Id*. She reported the pain was in her left anterior chest going through the back, and the pain is at a constant 7 of 10 when she breaths in, with increased pain when turning her trunk to left. *Id*. Nurse Hale recommended heat therapy for a thoracic sprain and refilled Plaintiff's muscle relaxers. (ECF No. 9, p. 432).

On January 6, 2015, Plaintiff underwent X-rays of her ankles, hands, feet and chest. (ECF No. 9, p. 728-732). The images were read by Dr. Eric Sale who found them to be unremarkable. (ECF No. 9, p. 729-732).

On January 12, 2015, Plaintiff had a CT scan of the lumbar region of her spine. The scan was read by Dr. Deland Burks who found: postsurgical laminectomy L4 and posterior fusion spanning L4-5, with inferior set of transpedicle screws extending beyond the anterior cortex of L5; multilevel degenerative facet arthropathy most pronounced at L3-4, and multilevel degenerative

disc disease at L4-5, L1-2, and T11-12, with mild bony ridging at T11-12 without canal stenosis. (ECF No. 9, pp. 539-540).

On January 14, 2015, Plaintiff was seen by Laura A. Henson, APRN, with complaints of multi-joint pain as well as continued low back pain, and she was requesting a CT scan or MRI. (ECF No. 9, p. 528).

On March 13, 2015, Plaintiff had an MRI on the cervical region of her spine. (ECF No. 9, p. 536). Dr. David Diment read the MRI and found spondylitic ridging and multilevel disc protrusions at the C3-4, C4-5, C5-6 and C6-7 levels, with impression on the left ventral cord at C6-7, right ventral aspect of the cord at C5-6 centrally, and right posterolaterally at C4-5 with borderline to mild canal stenosis, particularly at C4-5 and to a slightly lesser degree at C5-6. *Id.*

On March 13, 2015, Plaintiff had an MRI on the lumbar region of her spine. (ECF No. 9, p. 537). Dr. David Diment read the MRI and found: laminotomy changed L4-5 with some ligamentum flava hypertrophy on the right with mild thecal sac compression; diffuse bulge at L3-4 and facet and ligamentum flava hypertrophy; small left paracentral disc protrusion T11-12; and, a small central disc protrusion at L1-2. *Id*.

On March 13, 2015, Plaintiff had an MRI on the thoracic region of her spine. (ECF No. 9, p. 537). Dr. David Diment read the MRI and found: left paracentral disc protrusion at T11-12 and extending left posterolaterally with some thecal sac compression, possible left foraminal stenosis; right paracentral disc protrusion at T9-10 with cephalad extrusion of disc to the mid T0 level with some mild impression on the ventral aspect of the cord; and, small central disc protrusion at T7-8. No canal stenosis, normal thoracic cord. *Id*.

On April 7, 2015, Plaintiff was seen by Laura Henson, APRN, at River Valley Primary Care Services complaining of her lips going numb and a deep cough as well as having back pain, pain in every joint, with numbness and tingling still in her extremities. (ECF No. 9, p. 602). Nurse Henson's physical exam noted no decreased suppleness in her neck, normal unremarkable movement, normal gait and stance, and no coordination abnormalities. (ECF No. 9, p. 603).

On April 14, 2015, Plaintiff was seen at Mercy Clinic Neurosurgery by Joseph W. Queeney, D.O., with complaints of constant neck pain radiating down between her shoulder blades, tingling in forearms and numbness of her hands, and occasional numbness in the right side of her face. (ECF No. 9, p. 559). Dr. Queeney provided the following diagnoses: depression, anxiety, arthritis, hyperlipidemia, and tricuspid valve regurgitation. (ECF No. 9, p. 564). Dr. Queeney performed an upper extremity exam and reported normal strength and sensation in both left and right upper extremities, but 2/4 deep tendon reflex in both arms. (ECF No. 9, p. 566). Dr. Queeney reviewed x-rays and MRI scans and found the x-rays show sloping of the upper ribs consistent with atrophy and degenerative disc disease at multiple segments, while the MRI showed very minimal disc protrusion and spinal stenosis at multiple segments. *Id*.

On April 20, 2015, Plaintiff was seen by Dr. Queeney for intermittent back pain from her neck to buttocks with intermittent bilateral pain to her feet, tingling in her feet and lower legs, and slight numbness in the right foot. (ECF No. 9, p. 569). Dr. Queeney performed a lower extremity physical exam and noted full strength and sensation, but with reduced deep tendon reflex bilaterally at the patellar tendon and no reflex bilaterally at the Achilles tendon. (ECF No. 9, p. 572). Dr. Queeney reviewed x-rays of the thoracic and lumbar regions which showed arthritic changes as well as postoperative findings with intact hardware at L4-5. *Id*. He also reviewed an MRI of the same regions and found small disc protrusions in the lower thoracic spine that were

not surgically significant, and he did not see any significant neurocompression in the lumbar spine either. *Id*. He recommended Plaintiff continue with anti-inflammatory medications and be referred for pain management, but he declined to take surgical action. (ECF No. 9, p. 573). He further opined that a rheumatologist would be a more appropriate specialist. *Id*.

On May 1, 2015, Plaintiff was seen by Dr. Steve-Felix Belinga for back pain, leg pain, and tingling on the right side of her face. (ECF No. 9, p. 574). His physical exam showed largely normal findings with normal strength and sensation, but he did note a narrow-based gait. (ECF No. 9, p. 718). He provided the assessment of degenerative joint disease (DJD) of the cervical and lumber spine with one surgery in her lumber spine, but with multiple disc herniations in the cervical spine. (ECF No. 9, pp. 577-578). He opined that this likely explained the paresthesia in the upper extremities, but the findings in the lumbar spine caused paresthesia in the lower extremities. *Id*. He recommended non-surgical management including medication and physical therapy. *Id*.

On June 2, 2015, Plaintiff was seen by Debbie Koch, ANP, at Perspectives Mental Health Clinic for an assessment. (ECF No. 9, 583). Plaintiff reported that her depression began at the age of 24 years, however, she also reported suicidal ideations began at the age of 19 years. *Id*. Plaintiff reported that her anxiety began at the age of 23 years, and that she had experienced only one panic attack a few years ago. *Id.* The diagnoses rendered were moderate and recurrent major depressive disorder and social phobia. (ECF No. 9, p. 595).

On June 5, 2015, Plaintiff underwent a nerve conduction test which had been ordered by Dr. Belinga. (ECF No. 9, p. 726). Dr. Belinga reviewed the results and found they showed very mild sensory neuropathy in the lower extremities and mild carpal tunnel syndrome bilaterally. *Id*.

On July 3, 2015, Plaintiff was seen by Derrick R. Tygart, PT, of Mercy Hospital for skilled therapy including range of motion/strengthening exercises, progressive home exercise program, and modalities for pain. (ECF No. 9, p. 661). He noted facet irritation of inflammatory/neural compromise in nature with various degrees of severity ranked lumbar/cervical/thoracic arthropathy; excessive muscle tension ranked cervical/thoracic/lumbar; and, compromised circulation in extremities intermittently. *Id*.

On July 13, 2015, Plaintiff was seen again by Derrick R. Tygart for physical therapy and began cervical ACROM with plans to begin lumbar stretches the next visit and to continue to progress physical therapy as tolerated. (ECF No. 9, p. 667).

On July 29, 2015, Plaintiff was seen by Nurse Koch and reported that her mood had improved somewhat, but she still had difficulty concentrating and was tearful at times, with continued paranoia around people. (ECF No. 9, p. 650). The prognosis given at that time was fair improvement.

On September 21, 2015, Plaintiff was seen by Dr. Mervin N. Leader at Perspectives Behavioral Health Management, who noted that she was doing better since last seen, despite not being fully compliant with her medication. (ECF No. 9, p. 645). The prognosis given was fair improvement. (ECF No. 9, p. 647).

On October 19, 2015, Plaintiff had a follow up visit with Dr. Queeney and reported that her physical therapy did not help with her interscapular pain; that she had one pain procedure, but the neurologist wanted to do a procedure to burn her nerves and she refused; an aching at the back of her head which was relieved when she turned her head in a certain position; and, numbness in her hands and wrists. (ECF No. 9, p. 653).

On November 24, 2015, Plaintiff was seen by Dr. Leader on an urgent basis with problems related to side effects from Lexapro. (ECF No. 9, p. 639). The prognosis given was fair improvement. (ECF No. 9, p. 640).

On November 27, 2015, Plaintiff was seen by Robin Sanders, LPC, at Perspectives Behavioral Health Management. Her diagnoses were major depressive disorder and social anxiety disorder. (ECF No. 9, p. 621). Plaintiff reported the following problems: anxiety around people; needing someone to go with her inside stores; low mood and irritability; sleeping all the time, no motivation, low energy, and low self-esteem; low concentration; feelings of hopelessness/worthlessness; bad temper; and, that she can black out and "go off" on others physically and verbally when upset. (ECF No. 9, p. 622).

On December 23, 2015, Plaintiff had a new patient visit with Dr. Jessica Short presenting with a chief complaint of joint pain which reportedly started about two years ago. (ECF No. 9, p. 710). Dr. Short noted normal movements of all extremities, no joint instability, normal muscle strength and tone, but with an antalgic gait bilaterally and knee crepitus. (ECF No. 9, p. 742).

On January 1, 2016, Plaintiff was seen on an urgent basis by Dr. Leader at Perspectives Behavioral Health Management. (ECF No. 9, p. 634). He reported that since she was last seen she has continued to do poorly. *Id*. The prognosis given was significant risk of progressive decline despite continuing treatment. (ECF No. 9, p. 636).

On April 13, 2016, Plaintiff was seen by Dr. Jessica Short for joint pain and neuropathy, which Dr. Short described as of unclear etiology. (ECF No. 9, p. 735).

### III.   Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### IV. Discussion

Plaintiff raises the following issues in this matter: (1) whether the ALJ erred in developing the evidence; (2) whether the ALJ erred in evaluating Plaintiff's subjective complaints; (3) whether the ALJ erred in the RFC determination; and, (4) whether the ALJ erred in his reliance on the vocational expert. (ECF No. 13, pp. 6-15).

#### A. Development of the Record

Plaintiff argues the ALJ failed to properly develop the record as no physical RFC assessments were provided by any treating source and no consultative examinations were ordered. (ECF No. 13, p. 7). Plaintiff alleges that the ALJ made no attempt to develop any opinion evidence concerning the level of physical work activity that Plaintiff could perform on a sustained basis in view of the combination of her impairments, including multiple HNPs at all three spine levels, cervical, thoracic, and lumbar, as well as obesity, inflammatory disease, knee/feet, and CTS. *Id*. Plaintiff further alleges that the ALJ's failure to adopt greater mental restrictions in light of low

11

GAF scores is error as there was no other opinion evidence which contradicted the GAF scores.[1] *Id.*

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). The ALJ is not, however, required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

The need for medical evidence does not necessarily require the Commissioner to produce additional evidence not already within the record. An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). Providing specific medical evidence to support his disability claim is, of course, the Plaintiff's responsibility, and that burden of proof remains on him at all times to prove up his disability and present the

---

[1] A GAF is a numerical score from the *Diagnostic and Statistical Manual of Mental Disorders DSM-IV (DSM-IV)* that considers the "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *See DSM-IV* at 32 (4th ed. Text Revision 2000). We recognize that the DSM-V was released in 2013, replacing the DSM-IV. The DSM-V has abolished the use of GAF scores to "rate an individual's level of functioning because of 'its conceptual lack of clarity' and 'questionable psychometrics in routine practice.'" *Alcott v. Colvin*, No. 4:13-CV-01074-NKL, 2014 WL 4660364, at *6 (W.D. Mo. Sept. 17, 2014) (citing *Rayford v. Shinseki*, 2013 WL 3153981, at *1 n. 2 (Vet.App.2013) (quoting the DSM-V)). However, in cases in which DSM-IV was in use at the time the medical assessments were conducted, the Global Assessment of Functioning scores remain relevant for consideration. *Rayford*, 2013 WL 3153981, at *1 n. 2. However, in this case, the treatment and assignment of GAF scores in question took place well after the adoption of the DSM-V. (ECF No. 13, p. 14).

strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991); 20 C.F.R. § 416.912(a) and (c).

There is no requirement that an ALJ must obtain an RFC assessment from each treating or examining physician. The Eighth Circuit Court of Appeals has upheld the Commissioner's RFC assessment in cases where the ALJ did not rely on a treating physician's functional assessment of the claimant's abilities and limitations. *See e.g., Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007) (the medical evidence, state agency physician opinions, and claimant's own testimony were sufficient to determine RFC); *Stormo v. Barnhart*, 377 F.3d at 807-08 (medical evidence, state agency physicians' assessments, and claimant's reported activities of daily living supported the RFC); and, *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir. 2004) (ALJ properly relied upon assessments of consultative physicians and a medical expert).

The ALJ considered the medical evidence of record thoroughly, and those records contained sufficient medical evidence to allow the ALJ to determine whether the claimant was disabled. (ECF No. 9, pp. 18, 22-25). Plaintiff's assertion that ALJ ignored portions of examination results, particularly Dr. Belinga's documentation of a narrow-based gate, Dr. Short's notation of antalgic gait, and Dr. Queeney's documentation of muscular wasting and disuse atrophy, is without merit as the ALJ specifically discussed each of these findings. *Id.*

The ALJ did consider the Plaintiff's GAF score, and appropriately gave it little weight considering it was based on an assessment at one point in time and does not speak to the abilities of Plaintiff over a longitudinal period. (ECF No. 9, p. 27). Further, as noted above, GAF scores were eliminated by the DSM-V in 2013, so while they may be relevant to the ALJ's consideration in cases where the treatment occurred prior to 2013, these assessments were made well after the adoption of the DSM-V. (ECF No. 13, p. 14). In determining Plaintiff's RFC, the ALJ

13

appropriately relied upon Plaintiff's medical records, her own statements, and the assessment of the State Disability Determination Service's (DDS) doctor's assessment.

Considering the evidence as a whole, the Court concludes the ALJ was not required to further develop the record because it was already reasonably complete and contained sufficient evidence from which the ALJ could make an informed decision. There is no ambiguity in the medical evidence of record that must be resolved. The lack of RFC assessments provided by treating physicians does not render the record underdeveloped.

### B. Subjective Complaints

Plaintiff argues that the ALJ erred in improperly assessing the medical evidence presented, and that he addressed only the first two of the *Polaski* factors. (ECF No. 9, pp. 10-11).

The ALJ is required to consider all the evidence relating to Plaintiff's subjective complaints, including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id.* However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (citing *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted)). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Here, the ALJ considered Plaintiff's activities of daily living. (ECF No. 9, pp. 20-21, 26). The ALJ noted that Plaintiff reported she could tend to personal care, prepare simple meals, clean, do laundry, shop for groceries, drive and ride in a car, attend church, read, watch television or movies, talk with her mother and a friend daily, and supervise her grandchildren. (ECF No. 9, pp. 20-21, 26, 48, 50-51, 54-55, 60, 269-277, 295-305). The ALJ considered the frequency and intensity of Plaintiff's pain, noting the largely normal clinical examination and diagnostic findings and conservative treatment history. (ECF No. 9, pp. 22-26). The ALJ noted Plaintiff's reports of aggravating factors, specifically that she could not lift or carry more than 20 pounds, as well as her difficulty around people, and the ALJ incorporated those restrictions into his RFC assessment. (ECF No. 9, pp. 22-26). The ALJ noted and considered the medications, medication changes, and Plaintiff's report to her doctors concerning their effectiveness. (ECF No. 9, pp. 19-25). The ALJ considered Plaintiff's testimony at the hearing and her past reports regarding functional restrictions, including that she could lift only 20 pounds and had difficulty walking, standing, and turning her head, as well as mental symptoms such as difficulty sleeping and socializing. (ECF No. 9, pp. 22, 49).

The Court finds that the ALJ properly considered the *Polaski* factors and that his credibility determination was supported by substantial evidence.

### C. RFC Determination

Plaintiff argues that there is no substantial evidence to support the ALJ's determination that Plaintiff was not disabled, as it was not supported by either examining or treating source opinion evidence. Much of this argument has already been addressed above. She further argues that the postural limitations are problematic as the DDS physician's evaluation of the MER went

only through May 2015, providing no opinion evidence on manipulative restrictions as her carpal tunnel syndrome was not diagnosed until June 2015. (ECF No. 9, pp. 12-13).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p. It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614, 619 (8th Cir. 2007) (citing *Lauer v. Apfel*, 245 F.3d at 704); *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. 20 C.F.R. §§ 416.927(e)(2), 416.946.

In this case, the ALJ considered two years of treatment records from a multitude of medical sources regarding both Plaintiff's physical and mental impairments. (ECF No. 9, pp. 17-27). The

ALJ's RFC determination is supported by the medical and other evidence of record. The lack of RFC assessments from Plaintiff's treating physicians does not render the ALJ's RFC determination invalid. The Court finds that the ALJ's RFC determination is supported by substantial evidence.

### D. Vocational Expert Testimony

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). The ALJ's hypothetical question included all the limitations found to exist by the ALJ and set forth in the ALJ's RFC determination. *Id.* Based on our previous conclusion that the ALJ's RFC findings are supported by substantial evidence, we conclude that the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id.*, *see also Lacroix*, 465 F.3d at 889.

### IV. Conclusion

For the reasons and upon the authorities discussed above, it is recommended that the ALJ's decision be affirmed and the Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of September 2018.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE